**United States District Court**
For the Northern District of California

1
2
3
4
5
6                IN THE UNITED STATES DISTRICT COURT

7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ERIC PARKE; ANDREW SCHULTZ; and              No. C 06-04857 WHA
     ROYAL SLEEP CLEARANCE CENTER,
11   INC., on behalf of themselves, all others
     similarly situated, and in the interest of the
12   general public of the State of California,    **ORDER GRANTING
                                                    DEFENDANTS' MOTION
13               Plaintiffs,                        TO REMAND, DENYING
                                                    PLAINTIFFS' MOTION
14       v.                                         TO TRANSFER, AND
                                                    VACATING HEARING**
15   CARDSYSTEMS SOLUTIONS, INC.;
     MERRICK BANK CORPORATION; VISA
16   INTERNATIONAL SERVICE
     ASSOCIATION; VISA U.S.A., INC.;
17   MASTERCARD INTERNATIONAL
     INCORPORATED; and DOES 1-200,
18
                 Defendants.
19   _____/

20                        **INTRODUCTION**

21       This Court is essentially serving as junction point in this action. This order must

22   determine whether to remand this action to San Francisco Superior Court, to transfer the action

23   to the United States District Court for Arizona so as to allow consolidation with bankruptcy

24   proceedings involving debtor-defendant Cardsystems Solutions, Inc., or to send some parties

25   one way and other parties another. This order finds that while federal-subject-matter

26   jurisdiction exists under the bankruptcy-removal provision, 28 U.S.C. 1452, equitable factors

27   require remand of this entire action to state court. Accordingly, defendants' motion to remand

28   is **GRANTED**, and plaintiffs' motion to transfer is **DENIED**.

**STATEMENT**

On June 27, 2005, plaintiffs filed this putative-class action on behalf of "all others similarly situated in California" in California Superior Court for the County of San Francisco (Compl. ¶ 1). The complaint named as defendants Cardsytems, Merrick Bank Corporation, Visa International Service Association, Visa U.S.A., Inc., and Mastercard International Incorporated. The Visa defendants are headquartered in California. The other defendants are based elsewhere.

According to the complaint, "[t]his action arises from Cardsystems failure to maintain adequate computer data security of consumer credit card data and the reasonably foreseeable exploitation of such inadequate security at defendant Cardsystems by computer 'hackers,' causing the compromise of the privacy of private information of approximately Forty (40) Million consumer credit card account holders" (*ibid*.). This information purportedly related to information pertaining to these consumers' accounts with Visa and Mastercard (*id*. at ¶ 3). Merrick Bank "was in the business of providing credit card merchant and processing services for credit cards used by consumers in the State of California, the United States and abroad, owned and controlled Cardsystems Solutions, Inc. and 'subcontracted' its payment processing to them" (*id*. at ¶ 16). According to plaintiffs' complaint, Visa and Mastercard were liable in failing to prevent and disclose the security breaches occurring at Cardsystems, about which they knew or should have known (*id*. ¶ 5).

The complaint listed seven claims, all based on California law: (1) violation of California Civil Code § 1798.81.5(b); (2) violation of California Civil Code § 1798.81.5(c); (3) violation of California Civil Code § 1798.81; (4) violation of California Civil Code 1798.82; (5) negligence; (6) violation of California Business & Professions Code § 17200; and (7) violation of California Code of Civil Procedure § 1060. The California Civil Code sections listed comprise California's recently enacted regime to protect financial privacy.

On August 8, 2005, this action was assigned to the San Francisco Superior Court's Complex Litigation Department, specifically the Honorable Richard A. Kramer. Judge Kramer issued several substantive orders in this action. On October 18, 2005, Judge Kramer denied

United States District Court

For the Northern District of California

1  plaintiffs' request for a temporary restraining order and for a preliminary injunction requiring

2  Visa and Mastercard to notify all customers whose account information was jeopardized by the

3  purported breach at Cardsystems.  Also on October 18, Judge Kramer sustained the defendants'

4  demurrers to all of the claims brought by plaintiff Royal Sleep.  Again on October 18, Judge

5  Kramer denied plaintiffs' motion to compel various discovery and deposition requests.

6  Additionally, Judge Kramer held several case management conferences.  Discovery and

7  depositions were conducted.  On May 5, 2006, Judge Kramer ordered defendants' to

8  supplement their discovery productions.

9          On May 12, 2006, Cardsystems instituted Chapter 11 bankruptcy in United States

10  Bankruptcy Court for the State of Arizona.  Merrick Bank appeared as a creditor in the

11  bankruptcy proceedings.  Visa and Mastercard have not appeared as creditors or otherwise in

12  the bankruptcy proceedings to date and assert that they have "no present intention to appear in

13  the proceeding as creditors" (Br. 7; Masterson Decl. ¶ 4; Whitecotton Decl. ¶¶ 3–4; Hastings

14  Decl. ¶ 3).  On May 15, Cardsystems filed a notice of stay of these proceedings with respect to

15  it.

16          On August 10, 2006, plaintiffs removed this action to federal court pursuant to 28

17  U.S.C. 1452, the removal provision for actions "related to" bankruptcy proceedings.  Plaintiffs

18  now seek to transfer this action to the United States District Court for the District of Arizona, so

19  that this action can be consolidated with the Cardsystems bankruptcy proceedings.  Defendants,

20  in turn, seek to remand this action to state court on the grounds that this court lacks

21  subject-matter jurisdiction and on equitable grounds.

22                              **ANALYSIS**

23          In this circuit a court must determine whether or not it has subject-matter jurisdiction

24  before considering whether the venue is proper.  *See Bookout v. Beck*, 354 F.2d 823, 825

25  (9th Cir. 1965) ("jurisdiction must be first found over the subject matter and the person before

26  one reaches venue"); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal.

27  2001) ("A court may not transfer an action for improper venue unless it has subject matter

28  jurisdiction"); *see also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  ("This basic difference between the court's power and the litigant's convenience is historic in

2  the federal courts").

3     **1. MOTION TO REMAND.**

4     With the above principle in mind, this order first addresses defendants' motion to

5  remand.  The preliminary inquiry for the motion to remand is whether there is subject-matter

6  jurisdiction in the federal courts under 28 U.S.C. 1452.  Even if there is such jurisdiction,

7  however, this order must weigh certain equitable factors to determine if remand is nonetheless

8  appropriate.  In determining the existence of removal jurisdiction, "the court must look to the

9  complaint *as of the time the removal petition was filed.  Jurisdiction is based on the complaint*

10  as originally filed and not as amended."  *Abada v. Charles Schwab & Co., Inc.*, 300 F.3d 1112,

11  1117 (9th Cir. 2002) (internal citation omitted) (emphasis in original).[*]

12     **A. Jurisdiction under 28 U.S.C. 1452.**

13     Section 1452 provides for "removal of claims related to bankruptcy cases."  Under

14  Section 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the

15  district court for the district where such civil action is pending, if such district court has

16  jurisdiction of such claim or cause of action under section 1334 of this title."  Here, the crucial

17  question in determining the propriety of removal jurisdiction under Section 1452(a) is whether

18  the action is "related to" a bankruptcy case.  The Ninth Circuit has adopted the following test,

19  first articulated by the Third Circuit, for relatedness:

20      The usual articulation of the test for determining whether a civil
    proceeding is related to bankruptcy is whether *the outcome of the*
21      *proceeding could conceivably have any effect on the estate being*
    *administered in bankruptcy.*  Thus, the proceeding need not
22      necessarily be against the debtor or against the debtor's property.
    An action is related to bankruptcy if the outcome could alter the
23      debtor's rights, liabilities, options, or freedom of action (either
    positively or negatively) and which in any way impacts upon the
24      handling and administration of the bankrupt estate.

25

26  ───────────────

27    [*] It is worth noting that federal subject-matter jurisdiction over this putative-class action does not exist
under the Class Action Fairness Act, 28 U.S.C. 1332(d).  CAFA does not apply to actions such as this one
involving a class composed exclusively of California residents, a defendant that is a California resident (Visa),
28  alleged injuries relating to conduct occurring in California, and no other pending, related class actions.
28 U.S.C. 1332(d)(4).

4

1  *Fietz v. Great W. Sav.*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743

2  F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).  Indeed, the *Fietz* court made clear it was

3  adopting the most expansive reading of *Pacor*, rejecting opinions from other circuits that had

4  denied jurisdiction where only a "remote" relationship between the civil action and the

5  bankruptcy proceeding existed.  Under *Fietz*, even a remote relationship confers "related to"

6  jurisdiction under Section 1452.

7        Under this expansive view of relatedness, the outcome of the instant action "could

8  conceivably have any effect on the estate being administered in bankruptcy."  Clearly, the

9  claims against defendant Cardsystems may have some effect on the estate.  To the extent

10  Cardsystems is liable for damages in this action, the estate could be taxed, perhaps even

11  significantly given the potentially large scope of the putative class.  Similarly, Merrick Bank

12  allegedly "owned and controlled" Cardsystems, rendering any potential liability against it

13  pertinent to the status of the debtor Cardsystems' estate (Compl. ¶ 16).  Moreover, Merrick

14  Bank filed as a creditor in the bankruptcy proceedings, demonstrating its vested interest in the

15  available assets of the estate.

16        Visa and Mastercard argue that even if plaintiffs' claims against Merrick Bank and

17  Cardsystems relate to the bankruptcy proceedings, the same claims against Mastercard and Visa

18  do not.  The credit-card companies rely on the fact that they are not currently creditors in the

19  bankruptcy proceeding, although they only go so far as to state they have "no present intention

20  to be creditors" (Br. 7).  Regardless, of whether the credit-card companies are currently

21  participating in the bankruptcy proceedings or not, there is at least a conceivable effect that

22  liability against Visa and Mastercard would have upon the bankruptcy proceedings.  This

23  conceivable effect is the possibility that Cardsystems would be called to indemnify Visa and

24  Mastercard for any damages the credit-card companies ultimately incur as a result of this action.

25

26        Visa and Mastercard acknowledge that they have indemnification agreements with

27  Merrick Bank, but dispute the relevance of these agreements to determining the potential effect

28  on Cardsystems' bankruptcy.  The credit-card companies' argument is unpersuasive for two

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   reasons.  *First*, according to the complaint, Merrick Bank *owns* Cardsystems.  It is plausible that

2   the indemnification duty owed by Merrick Bank could extend to its subsidiaries.

3        *Second*, in any event, recent case law suggests that the possibility of indemnification or

4   contribution by the debtor, *even in the absence of a formal indemnification agreement*,

5   constitutes a conceivable effect so as to trigger "related to" jurisdiction under Section 1452.

6   *See In re Sizzler Rests. Int'l, Inc.*, 262 B.R. 811, 818–19 (Bankr. C.D. Cal. 2001) ("While

7   Sizzler's duty to indemnify is not based on an unconditional contractual obligation, this court is

8   persuaded by those cases which have refused to read *Pacor* as requiring an unconditional

9   indemnification agreement"); *Williams v. Shell Oil Co.*, 169 B.R. 684, 690 (S.D. Cal. 1994)

10  ("unlike the defendants in *Pacor*, Brass and Celanese have entered into a sharing agreement by

11  which Brass agreed, prior to bankruptcy, to indemnify Shell and Celanese").  Here, there

12  appears to be an applicable indemnification agreement between the credit-card companies and

13  the debtor's parent.  Even in the absence of such an agreement, however, the reasoning of

14  *Sizzler* shows that a finding of relatedness would still be appropriate given the possible duty to

15  indemnify under principles of equitable contribution.

16                      **B.        Remand on Equitable Grounds.**

17       "[E]ven where federal jurisdiction attaches in actions 'related to' bankruptcy

18  proceedings, Congress has explicitly provided for courts to find that those matters are more

19  properly adjudicated in state court."  *Williams*, 169 B.R. at 690.  Section 1452(b) provides for

20  such equitable remand:

21               The court to which such claim or cause of action is removed may
             remand such claim or cause of action on any equitable ground.
22           An order entered under this subsection remanding a claim or
             cause of action, or a decision to not remand, is not reviewable by
23           appeal or otherwise by the court of appeals under section 158(d),
             1291, or 1292 of this title or by the Supreme Court of the United
24           States under section 1254 of this title.

25  Courts have identified the following non-exclusive list of factors as relevant to determining

26  whether to remand on equitable grounds:  (1) the effect of the action on the administration of

27  the bankruptcy estate; (2) the extent to which the issues of state law predominate; (3) the

28  difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to

United States District Court
For the Northern District of California

1  the bankruptcy case; (6) the existence of a right to jury trial; and (7) prejudice to the party

2  involuntarily removed from state court.  *See Hopkins v. Plant Insulation Co.*,  __ F. Supp.

3  2d __, 2006 WL 2130740, at *7 (N.D. Cal. July 27, 2006); *Williams*, 169 B.R. at 692–93.

4  Applying the preceding factors to the instant action, this order holds that remand to the

5  state court is appropriate.  Most significantly here, plaintiffs' putative-action exclusively

6  involves issues of state law.  All seven of plaintiff's claims were brought under California

7  common or statutory law.  No federal claims were asserted.  Moreover, plaintiffs' claims are not

8  run-of-the-mill state claims.  Several of plaintiffs' claims implicate complicated issues of

9  financial privacy on which the California courts have yet to rule.  Plaintiffs brought claims

10  under California Civil Code §§ 1798.181.5(b), 1798.81.5(c), 1798.81, and 1798.82, provisions

11  of the financial-privacy regime enacted by the California legislature over the last six years.

12  There appears to be no reported appellate decisions interpreting these code provisions.  "[W]hen

13  a state court proceeding sounds in state law and bears a limited connection to a debtor's

14  bankruptcy case, abstention is particularly compelling." *Citigroup, Inc. v. Pac. Inv. Mgmt. Co.*,

15  296 B.R. 505, 509 (C.D. Cal. 2003) (internal citation omitted).

16  Adding to the above considerations, the putative plaintiffs are, by definition, California

17  residents.  "Comity dictates that California courts should have the right to adjudicate the

18  exclusively state law claims involving California-centric plaintiffs and California-centric

19  transactions." *Citigroup*, 296 B.R. at 509.

20  Furthermore, there is little relation between the bankruptcy proceedings and plaintiffs'

21  putative-class action.  This action involves questions of disclosure of private information

22  brought against several defendants, only one of whom is a debtor.  The credit-card companies,

23  at least as the present moment, are not even involved in the bankruptcy proceedings.  A transfer

24  order, therefore, would have the effect of requiring the bankruptcy court to resolve

25  non-bankruptcy claims against non-debtor parties.  The case law advises against such a result.

26  "[T]he potential danger arises that the court will be forced to resolve non-bankruptcy related

27  issues between non-debtors.  The courts have uniformly held that a bankruptcy court should

28

7

United States District Court

For the Northern District of California

1  avoid such a situation." *Western Helicopters, Inc. v. Hiller Aviation, Inc.*, 97 B.R. 1, 6 (E.D.

2  Cal. 1988) (citations omitted).

3         Remand also avoids a waste of judicial resources.  As stated above, the San Francisco

4  Superior Court already devoted over a year of its time to this action.  During that period, the

5  state court issued substantive rulings on plaintiffs' request for temporary and injunctive relief,

6  as well as on defendants' demurrers.  The state court also exhausted resources on case

7  management and on discovery disputes.  Failing to remand will require a new court to expend

8  resources getting up to speed on an action that has been pending for over a year, a result that

9  should be avoided.  *See, e.g.*, *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 667 (Bakr. C.D. Cal. 2001)

10  ("The Los Angeles Superior Court, having devoted many hours to the resolution of disputes in

11  this matter over the course of the last several years, is the most appropriate forum for the parties

12  to litigate these claims").  Moreover, transfer at this late juncture could yield inconsistent

13  results, such as if the bankruptcy court granted injunctive relief.  There does not seem to be any

14  concurrent benefit to the efficient administration of the bankruptcy estate — adding these

15  complicated state claims will only muddle the bankruptcy proceedings.  *See, e.g.*, *Western*

16  *Helicopters*, 97 B.R. at 7 ("In addition to the unnecessary expense and expenditure of

17  duplicative judicial resources, bifurcating this civil claim creates the real danger of inconsistent

18  results.  Such a risk should be avoided if there are no countervailing benefits"); *Williams*, 169

19  B.R. at 693 (finding that the consolidation of products-liability claims with the bankruptcy

20  proceedings "would unduly burden the administration of the bankruptcy estate").

21         Finally, the non-debtor defendants will be prejudiced in the absence of a remand.  These

22  defendants have spent considerable resources defending this action in state court, including

23  engaging in motion practice and conducting discovery.  The non-debtor defendants will have to

24  hire new counsel competent to practice in Arizona, and this new counsel will have to expend

25  time and resources learning the case.  This prejudice weighs in favor of equitable remand.

26  *See, e.g.*, *TIG*, 264 B.R. at 667 ("The parties to the Action [other than the debtor] would be

27  significantly prejudiced if they were required to begin the education process anew with a new

28  judge in a new court").

8

1                              *           *           *

2          In cases where equitable remand is appropriate such as this one, courts have found

3   remand appropriate as to all defendants, rather than as to exclusively the non-debtor defendants.

4   For example in *TIG*, the district court found that where the claims against the debtors and

5   non-debtors alike were based entirely on state law and where significant resources had been

6   exhausted in state court as to claims against both sets of defendants, complete remand was

7   appropriate. *TIG*, 264 B.R. at 667; *see also Williams*, 169 B.R. 694.

8          So too here. The state court expended over a year adjudicating the claims against

9   Cardsystems alongside the claims against defendants Visa, Mastercard, and Merrick Bank. The

10  claims against Cardsystems involve the same novel and complicated issues of state law

11  described above. The only difference is the absence of prejudice to Cardsystems, since

12  Cardsystems already has to participate in the Arizona bankruptcy proceedings. This lack of

13  prejudice does not mean, however, that somehow plaintiffs would benefit by splitting the two

14  actions. On the contrary, the division of this action into two classes of defendants would

15  compound the potential waste of resources that can only be avoided by remand. It would also

16  heighten the risk of inconsistent results. This order thus finds that equitable remand is

17  appropriate as to all defendants.

18          **2.      MOTION TO TRANSFER.**

19          Having concluded that this action should be remanded in its entirety to the San

20  Francisco Superior Court on equitable grounds, nothing remains of this action to be transferred

21  to Arizona. *See, e.g.*, *TIG*, 264 B.R. at 667. Plaintiffs' motion to transfer, therefore, is **DENIED**.

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

9

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, defendants' motion to remand is **GRANTED** and plaintiffs'
motion to transfer is **DENIED**.  The Clerk shall send the entire file to San Francisco Superior
Court immediately.  Finding no further argument necessary, the hearing on this motion is
hereby **VACATED**.


**IT IS SO ORDERED.**


Dated:  October 11, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10